UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROSARIO DIVINS, | * | |
| | * | |
| Movant, | * | |
| | * | |
| v. | * | CIV. NO. SA-11-CA-547-FB |
| | * | [SA-08-CR-889-FB] |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |
| | * | |

MEMORANDUM AND RECOMMENDATION

In this motion to vacate sentence, filed pursuant to 28 U.S.C. § 2255, Rosario Divins challenges her conviction and sentence for criminal contempt and mail fraud. (Docket no. 99). In her motion, as her sole ground for relief, she cites to the decision of the United States Supreme Court in *Skilling v. United States*, 561 U.S. ____, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). In a supplemental brief, she raises numerous other claims, most of which are not cognizable. Having considered the motion, the government's responses, and the applicable law, the Court is of the opinion the motion should be denied.

Background

According to the superseding indictment, the charges against Divins stem from her representations to individuals in financial distress that she could aid and assist them in preventing the foreclosure of their homes for the payment of a fee. She is

neither an attorney nor is she licensed to practice law in the State of Texas.  On occasion, persons who enlisted the services of Divins filed for bankruptcy in the United States Bankruptcy Court for the Western District of Texas.  Thus, Divins's practice of collecting fees from those in financial distress and those individuals filing for bankruptcy (debtors) has brought her behavior within the purview of the United States Bankruptcy Court for the Western District of Texas.  Both Chief Bankruptcy Judge Ronald B. King and Bankruptcy Judge Leif M. Clark, who preside over cases in the San Antonio Division of the United States Bankruptcy Court for the Western District of Texas, sanctioned the activities of Divins and ordered her to stop her activities.

Divins was ordered by Chief Judge King not to engage in the unauthorized practice of law, not to counsel people on bankruptcy practices, and not to charge or collect referral fees from attorneys or share fees with attorneys.  Judge Clark enjoined Divins from offering or providing any bankruptcy petition preparation service or activity on behalf of anyone at any time and in any fashion; making any representation of any kind, express or implied, to any individual or to the public that she or persons associated with her can or would assist or help or ever try to assist or help any individual or persons to "stop foreclosure"; making any representation, express or implied, that "mortgage brokering services" can or may be able to assist any individual or

persons to "stop foreclosure"; and, making any representation, express or implied, to any individual or persons that she or persons associated with her can assist with bankruptcy filings, actually help debtors file bankruptcy cases, or advise individuals or persons with respect to a bankruptcy case.   Divins was admonished that failure to comply could result in a finding of contempt of court.

The superseding indictment then alleges that, from on or about January 4, 2000 and continuing until December of 2008, Divins, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.   According to the superseding indictment, the object of the fraudulent scheme was for Divins, with fraudulent offers of assistance, to fraudulently acquire money, funds and other property from individuals who were in financial distress and facing foreclosure of their homes or property.   It was also part of the fraudulent scheme that she used the United States Postal Service or private or commercial interstate carrier to deliver mail matter, specifically a "flyer" advertising her services, which "flyer" misrepresented material facts regarding her ability to help them with their financial problems.

Counts One through Seven charged Divins with contempt of court in violation of 18 U.S.C. § 401(3) for disobedience of orders of

the United States Bankruptcy Court.  Counts Eight through Fourteen of the superseding indictment alleged that Divins engaged in mail fraud, in violation of 18 U.S.C. § 1341, in executing her scheme to defraud.  On June 17, 2009, following a jury trial, a jury found her guilty on all counts.   On September 11, 2009, Divins was sentenced to serve 6 months in prison on each of Counts One through Seven, to be served concurrently with each other and concurrently with Counts Eight through Fourteen.  She was sentenced to serve 50 months on each of Counts Eight through Fourteen to be served consecutively to one another, for a total sentence of 350 months. Divins was sentenced to a term of supervised release of three years on each of the 14 counts to be served concurrently upon her release from imprisonment.  (Docket no. 55).

Divins appealed.  She argued that (1) the district court erred in denying her motion for judgment of acquittal because the criminal contempt charges were barred by the statute of limitations, (2) the evidence was insufficient to support her mail fraud convictions because the government did not prove her intent to defraud or that the representations made in the mailings were in furtherance of a fraudulent scheme, (3) the district court violated her due process rights by excluding documentary and testimonial evidence she sought to present at trial, and (4) her counsel was ineffective in failing to comply with the discovery order.   The

Court of Appeals rejected the first three claims and declined to consider the last claim.

Divins also challenged the District Court's application of an eight-level enhancement to her offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(E) based on a finding that the amount of loss was greater than $70,000.  She further argued that the District Court's consideration of sworn testimony from victims at the sentencing hearing, who did not testify at trial, violated her rights under the Confrontation Clause and Federal Rule of Criminal Procedure 32. The Court of Appeals held that no error was committed.  Divins' conviction and sentence were affirmed by the Fifth Circuit Court of Appeals on May 16, 2011.  The motion to vacate sentence now before the Court was filed June 20, 2011, the date it was signed by Divins and, presumably, delivered to prison officials for mailing.

## Analysis

### 1. Honest services

Divins contends that, under the Supreme Court's decision in **Skilling**, she did not engage in fraud as defined by 18 U.S.C. §§ 1341 and 1346.  In **Skilling v. United States**, Jeffrey Skilling, the chief executive officer of Enron from February until August 2001, was charged with dozens of Enron employees who participated in an elaborate conspiracy to prop up Enron's stock prices by overstating the company's financial well-being.  Count 1 of the indictment charged Skilling with conspiracy to commit

5

"honest-services" wire fraud, 18 U.S.C. §§ 371, 1343, 1346, by depriving Enron and its shareholders of the intangible right of his honest services.   Skilling was also charged with over 25 substantive counts of securities fraud, wire fraud, making false representations to Enron's auditors, and insider trading.

Section 1343 punished a person who, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.   Section 1346 defines the term "scheme or artifice to defraud" to include a scheme or artifice to deprive another of the intangible right of honest services.   Skilling alleged that his conspiracy conviction was premised on an improper theory of honest-services wire fraud.   The honest-services statute, 18 U.S.C. § 1346, Skilling maintained, is unconstitutionally vague. Alternatively, he contended that his conduct did not fall within the statute's compass.

The Supreme Court analyzed the development of the honest-services fraud theory through the mail and wire fraud laws. *Skilling*, 130 S.Ct. at 2926-27.   In *McNally v. United States*, 483 U.S. 350, 360 (1987), the Supreme Court held that the mail fraud

statute did not extend to the protection of intangible rights. *Id*. Congress responded by enacting § 1346. *Id*.

Skilling argued that the phrase "intangible right of honest services" was unconstitutionally vague. The Supreme Court noted that the "vast majority" of the honest-services cases pre-*McNally* involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes. *Skilling*, 130 S.Ct. at 2930. It then held that, to preserve the statute without transgressing constitutional limitations, § 1346 criminalizes only the bribe-and-kickback core of the pre-*McNally* case law. *Id*. at 2931.

The Supreme Court noted that Skilling was charged with conspiring to defraud Enron's shareholders by misrepresenting the company's fiscal health, thereby artificially inflating its stock price, and that he profited from the fraudulent scheme through the receipt of salary and bonuses, and through the sale of approximately $200 million in Enron stock. *Skilling*, 130 S.Ct. at 2934. However, the government did not allege that Skilling solicited or accepted side payments from a third party in exchange for making these misrepresentations. *Id*. Therefore, he did not commit honest-services fraud. *Id*.

Divins cites two other cases decided the same day as *Skilling*. In *Black v. United States*, 561 U.S. _____, 130 S.Ct. 2963, 177

7

L.Ed.2d 695 (2010), the Government pursued alternative theories: (1) money-or-property fraud; and (2) honest-services fraud.  The jury returned general verdicts of "guilty" on three mail fraud counts.  After deciding that defendants had not forfeited their right to challenge the instructions, by declining to acquiesce in the Government-proposed special-verdict forms, the Supreme Court held that, in light of *Skilling*, the honest-services instructions were incorrect.  In ***Weyhrauch v. United States***, 561 U.S. ___, 130 S.Ct. 2971, 177 L.Ed.2d 705 (2010), the defendant, as a lawyer and former member of the Alaska House of Representatives, was indicted on charges of using the postal service to carry out a scheme to defraud Alaska of the right to defendant's honest services by mailing his resume soliciting future legal work from an oil field services company in exchange for voting favorable to the company on oil tax legislation.  The case was vacated and remanded in light of ***Skilling***.

Divins asserts that the jury in her case was instructed on the deprivation of honest services, money and property, and, in accordance with the Supreme Court's holding in ***Skilling***, her conviction is flawed.  She states that her mail fraud convictions do not involve bribes or kickbacks and must be reversed.  Divins also argues that the contempt charges on which she stands convicted are intertwined with the mail fraud convictions.  She contends that, because the jury would not have convicted her of contempt

8

absent the claims of the government on the fraud charges, the contempt convictions must also be reversed.

Title 18 U.S.C. § 1341, under which Divins was charged, makes it unlawful to devise or intend to devise any scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, and to utilize any post office or authorized depository for mail matter for the purpose of executing such scheme or artifice. In its jury instructions on Counts Eight through Fourteen, the District Court advised the jury that to find Divins guilty of mail fraud, it must be convinced the government had proved four elements beyond a reasonable doubt, the first being that she knowingly created a scheme to defraud, that is to obtain money and property by means of false and fraudulent pretenses, representations and promises. **Court's Instructions to Jury**, p. 29. Then, the District Court defined a "scheme to defraud" as any scheme to deprive another of money, property, or, in accordance with § 1346, of the intangible right to honest services by means of false or fraudulent pretenses, representations, or promises. **Id.**

The government first responded, in apparent consistency with this instruction, that Divins' case was submitted to the jury on two alternative, legally valid theories: (1) a scheme to deprive another of money, or property; and (2) a scheme to deprive another of the intangible right to honest services. **Government's Response,**

9

docket no. 106, p. 8.  It contended that if either of these two theories is supported by sufficient evidence, then the conviction should stand.  **Id.**  However, in the very next paragraph of its response, the government, contradictorily, discounts any intent to charge Divins under the honest-services theory.  **Id.**  The government states that the object of Divins' fraudulent scheme was to fraudulently acquire money, funds and property from individuals for the purpose of justly enrich herself at the expense of individuals in financial distress - not to deprive another of the intangible right of honest services.  **Id.**  Furthermore, according to its second argument, unlike the defendants in ***Skilling***, ***Black***, and ***Weyhrauch***, Divins was not charged with honest services fraud. **Id.**  In this paragraph, the government states that Divins was charged with a conventional scheme to obtain money by fraud, thus, ***Skilling*** does not apply.

Divins replies that she was charged under both theories and the jury returned a general verdict.  **Motion to Supplement Rebuttal**, docket no. 110.  She states that it is not possible to know under what theory she was convicted and that the jury could have convicted her under an invalid honest-services theory.  In support, Divins cites ***United States v. Redzic***, 627 F.3d 683 (8th Cir. 2010).

In **Redzic**, the defendant, Mustafa Redzic, was convicted for mail and wire fraud pursuant to the honest services theory, in connection with a scheme to obtain commercial driver's licenses ("CDL") for students in Redzic's truck driving school from Redzic's coconspirator, Troy Parr, a licensed agent of the state who served as a CDL examiner, conducted inadequate testing, and submitted false paperwork for CDL licenses to the state, thereby depriving the state of the honest services of its agent.  Redzic first argued that the indictment, the government's argument at trial, and the jury instructions all proceeded on the theory that he and Parr had defrauded the state of Missouri of property in the form of CDLs. Redzic stated that the indictment charged him with defrauding the state of property, not honest services, and that to convict him on a honest services theory would amount to a constructive amendment of the indictment in violation of his Fifth Amendment rights.

The Court of Appeals stated that, while it would have been preferable for Redzic's indictment to have included the term "honest services," its omission was not fatal.  **Redzic**, 627 F.3d at 689.  The Court reviewed the allegations in the indictment and found they were more than sufficient to make out a case that Redzic and Parr intentionally devised a fraudulent scheme whereby the State of Missouri was deprived of its right to Parr's honest services in a manner involving precisely the offense preserved in **Skilling**.  **Id**. at 688.  The Court of Appeals rejected Redzic's

11

contention that at trial the government relied exclusively on a loss of property theory. *Id*. at 689. Although the jury instruction did not specifically reference "honest services," the Court held that, read as a whole, they adequately conveyed the law applicable to Redzic's case. *Id*. at 690. Thus, in ***Redzic***, the issue was whether Redzic had been charged and convicted on an honest-services theory, not whether the trial court erred by submitting both that theory and the money/property fraud theory to the jury at the same time.

In response to Divins' motion to supplement rebuttal, the government concedes, consistently with its second argument, that this is not an honest-services case because the prosecution of Divins did not involve a bribery or kickback scheme. **Response**, docket no. 111, p. 2. It acknowledges that an instructional error arguably occurred when the jury was provided the definition of a "scheme to defraud" as any scheme to deprive another of the intangible right to honest services. However, the government asserts, citing ***Skilling***, that the error can be harmless. ***Skilling***, 130 S.Ct. at 2934-35. Thus, the harmless error analysis does apply in the context of a jury instructed on multiple theories of guilt, one of which is improper, so long as the error at issue does not categorically vitiate all the jury's findings. ***Hedgpeth v. Pulido***, 555 U.S. 57, 61 (2008).

In *United States v. Barraza*, 655 F.3d 375 (5th Cir. 2011), Manuel Barraza was convicted of wire fraud and making false statements in connection with his use of his position as a state judge to obtain money and sexual favors in exchange for assisting a state criminal defendant. Among other things, Barraza argued that the jury may have convicted him based on a "failure-to-disclose" theory of honest services liability that the Supreme Court declared unconstitutional in *Skilling*. *Barraza*, 655 F.3d at 381. The District Court instructed the jury that it could find Barraza guilty of wire fraud if he had either (1) defrauded the state of the intangible right of honest services or (2) obtained money by fraud. *Id.* at 382. In Count One, the jury found both types of fraud, but in Count Two, the jury only found honest services fraud. *Id.* Barraza's indictment stated that he committed honest services fraud in two ways: (1) by "fail[ing] to disclose to his constituency and to the State of Texas that he received money," and (2) by accepting bribes. *Id.* However, under *Skilling*, honest services fraud only consists of bribery and kickbacks, not the failure to disclose receipt of money. *Id.* Therefore, the first portion of the indictment was an improper grounds for conviction. Barraza challenged his conviction on an alternative-theory error—the jury was instructed on alternative theories of guilt, rendered a general verdict, and could have relied on an invalid theory in returning the guilty verdict. *Id.* The government

13

conceded error, but the question remained whether the error was harmless.

An error is harmless if the court "after a thorough examination of the record is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Barraza*, 655 F.3d at 382, *quoting*, *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011). The error may also be harmless "if the jury, in convicting on an invalid theory of guilt, necessarily found facts establishing guilt on a valid theory." *Id*. Barraza contended that his failure to disclose fee-splitting with his former partner while he was on the state bench would deprive his constituents of an intangible honest service without also being bribery. However, a review of the record by the Court of Appeals suggested that was not the reason the jury found him guilty of Count Two. *Id*. The Court noted that the government's opening statement never mentioned the fee-splitting arrangement and likewise the closing argument focused on Barraza's bribery, not fee-splitting. *Id*. Moreover, the Court mentioned that witness testimony centered on Barraza's attempts to obtain money and sexual favors in exchange for his assistance in his capacity as a judge. *Id*. at 382-83. Based on the record, the Court of Appeals concluded beyond a reasonable doubt that the verdict would have been the same absent any error in the jury instructions and the indictment. *Id*. at 383.

14

The Court has little difficulty in concluding that submission of the honest-services instruction to the jury in this case was harmless error.  The general allegations of Divins' superseding indictment state, in relevant part, that:

11. From on or about January 4, 2000 and continuing until December of 2008, the Defendant, devised and intended to devise a scheme and artifice to defraud and **to obtain money and property** by means of false and fraudulent pretenses, representations and promises.

12. The object of the fraudulent scheme was for the Defendant **to fraudulently acquire money, funds and other property** from individuals.

13. The purpose of the fraudulent scheme was for the Defendant to unjustly enrich herself at the expense of those in financial distress.

14. It was part of the fraudulent scheme that the Defendant preyed upon people in desperate financial situations and those facing foreclosure of their homes or property with fraudulent offers of assistance.

15. It was part of the fraudulent scheme that the Defendant used the United States Postal Service or private or commercial interstate carrier to deliver mail matter, specifically a "flyer" advertising her services.

15

16. It was part of the fraudulent scheme that the "flyer" misrepresented material facts. ...

17. It was part of the scheme that the **Defendant demanded payment in cash.**

18. It was part of the scheme that the Defendant would lull people into the mistaken belief that she was working hard to save their home and that everything was in order.

19. It was part of the scheme that **after receiving an initial cash payment, the Defendant would continue to solicit additional money from people.**  (emphasis added).

**Superseding Indictment,** pp. 4-5.

Each of Counts Eight through Fourteen charges Divins with knowingly devised and intended to devise a scheme and artifice to defraud and **to obtain money and property** by means of false and fraudulent pretenses, representations and promises.  (emphasis added).  As the government notes, there are no allegations in the superseding indictment which allege that Divins sought to deprive another of the intangible right of honest services.  The superseding indictment does not cite to 18 U.S.C. § 1346.

The government argues, and Divins does not dispute, that the trial centered upon the misrepresentations and omissions made by Divins *before* the victims parted with their money.  Again, as the government points out, the scheme to defraud the victims of money was complete before Divins even began to deprive them of a right to

16

honest services.  The government did not reference the deprivation of a right to honest services during final arguments.  Instead, the trial was focused throughout on Divins' scheme to defraud the victims of their money.  ***See United States v. Segal***, 644 F.3d 364, 366-67 (7th Cir. 2011)(erroneous submission of honest services fraud charge to jury was harmless beyond reasonable doubt in prosecution for mail and wire fraud, where, to extent that defendant was depriving others of his honest services in operation of insurance brokerage firm and maintenance of firm's trust account, it was because he was taking their money from trust account to expand his business).  The reference in the jury instructions to honest-services was isolated and insignificant.  The Court concludes beyond a reasonable doubt that the verdict would have been the same absent that reference in the jury instructions.

## 2. Other claims

Without seeking leave of the Court, Divins has submitted a plethora of additional claims, with almost no facts in support.  In her Motion to Supplement Rebuttal (docket no. 11), Divins complains that after an in-chambers conference between the prosecutor, her attorney and the forewoman of the jury, the forewoman remained in chambers with Chief Judge Biery.  Without any explanation or facts, Divins claims that this resulted in a miscarriage of justice, judicial misconduct, ineffective assistance of counsel, and prosecutorial misconduct.  In her response to the

government's response (docket no. 113), Divins alleges that (1) the forfeiture and money judgment should be set aside, (2) she was falsely arrested, (3) the grand jury was misled by false testimony, (4) prosecutorial misconduct, (5) the evidence was insufficient, (6) the prosecution witnesses committed perjury, (7) the District Court erroneously admitted hearsay evidence, (8) the evidence did not support an adjustment for obstruction of justice, (9) the restitution award is flawed, (10) her attorney rendered ineffective assistance by (a) not preparing for trial, (b) relying on the government' evidence, (c) failing to perform a proper investigation of government witnesses, (d) failing to depose government witnesses, (e) failed to exchange her evidence with the prosecutor to prove her innocence, (f) failed to argue on the correct sentences and Guidelines, (g) failed to do discovery of government witnesses, (h) failed to stop false accusations and perjury by government witnesses, and (i) failed to seek dismissal of the indictment[1], (11) her sentence was excessive, (12) the District Court was biased, and, (13) the District Court erred in various rulings, including denial of a motion for continuance.  This pleading was followed by Divins' Conclusion (docket no. 114) and her Rebuttal (docket no. 115).

---

[1]Later in the same pleading, Divins lists 100+ deficiencies in her trial attorney's performance.

Divins' claim that the evidence was insufficient to support her convictions cannot be reconsidered. It is well-settled in this circuit that issues raised and disposed of on appeal from an original judgment of conviction are not considered in a § 2255 motion. *United States v. Rocha*, 109 F.3d 225, 230 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). Also, Divins cannot attack a final judgment of property forfeiture via a § 2255 motion to vacate sentence. *United States v. McGuire*, 105 F.3d 655, 1996 WL 762945, at *1 (5th Cir. 1996). Most of her remaining claims are procedurally barred.

A motion to vacate sentence under § 2255 is not a substitute for direct appeal. *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995). Section 2255 provides relief if the federal petitioner can establish that: (1) her sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose such sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that she is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

The following allegations are procedurally barred for failing to raise them on direct appeal: her illegal seizure claim, *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Cade v. United States*, 2012 WL 20481, at *2 (N.D.Tex. 2012); her claim that the grand jury was misled by false testimony, *United States v. O'Keefe*, 2005 WL 1578625, at *12 (E.D.La. 2005); her claim of prosecutorial misconduct, *Cartwright v. United States*, 2011 WL 6003659, at *10 (E.D.Tenn. 2011); *Shafer v. United States*, 2011 WL 1357515, at *9 (W.D.Mo. 2011); her claims that prosecution witnesses committed perjury and the District Court erroneously admitted evidence, *United States v. Celio*, 2011 WL 3799028, at *13 (D.Colo. 2011); her sentencing claims, *United States v. Wike*, 81 F.3d 154, 1996 WL 101354, at *1 (5th Cir. 1996); her claim of judicial bias, *see United States v. Mackey*, 299 F.Supp.2d 636, 643 (E.D.La. 2004); and, finally, her claim regarding District Court rulings, *see Cade*, 2012 WL 20481, at *1-2.

Divins has made no attempt to establish cause for failing to raise these issues on appeal.   Thus, her procedural default can be excused only if she demonstrates that she is actually innocent.  To establish the requisite showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent, the petitioner must show that it is more likely than not, in light of new, reliable evidence not presented at trial, that no

reasonable juror would have found her guilty beyond a reasonable doubt.  ***Schlup v. Delo***, 513 U.S. 298, 323 and 327 (1995).  While many petitioners claim to be actually innocent, a substantial claim of actual innocence is "extremely rare."  ***Id.*** at 321.  To be credible, such a claim requires the petitioner to support her allegations of constitutional error with new, reliable evidence that was not presented at trial.  ***Id.*** at 324.  Other than her ***Skilling*** claim, which has been rejected, Divins has made no attempt to satisfy this requirement.

To the extent any of Divins' numerous claims have not been procedurally defaulted, they fail to state a claim for relief. Mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.  ***United States v. Woods***, 870 F.2d 285, 288 n.3 (5ᵗʰ Cir. 1989), *citing*, ***Ross v. Estelle***, 694 F.2d 1008, 1012 (5ᵗʰ Cir. 1983).  Divins claims she was falsely arrested but provides no facts or law to support that claim.  She conclusorily states that the grand jury was misled by false testimony and that the prosecution witnesses committed perjury but, again, offers nothing to support her assertions besides her own self-serving argument.  Divins cites numerous incidents of prosecutorial misconduct, such as, for example, suborning perjury, entrapment, improper questioning of witnesses, withholding exculpatory evidence, ambushing Divins, and misrepresenting material facts, but offers no facts in support of her charges.  She

claimed, for example, that the District Judge failed to dismiss the superseding indictment based upon double jeopardy, violated her Fifth Amendment rights, and limited cross-examination. Divins provided no insight into these or any other allegations. Aside from her claim of ineffective assistance of counsel, Divins has not raised an issue cognizable under § 2255.

Failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later proceeding under § 2255. *Massaro v. United States*, 538 U.S. 500 (2003). To obtain habeas relief on a claim of ineffective assistance of counsel, the petitioner must demonstrate that her counsel was deficient and that the deficiency prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As with most of her § 2255 claims, Divins has presented brief allegations with no facts in support. Conclusory allegations of ineffective assistance of counsel are not sufficient to raise a constitutional issue. *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

For example, Divins alleges that her attorney, Ronald P. Guyer, failed to investigate and prepare her case for trial. Counsel has a duty to make a reasonable investigation of defendant's case or make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 691. As

support for this claim, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. ***Miller v. Dretke***, 420 F.3d 356, 361 (5th Cir. 2005).   Brief and conclusory allegations that counsel's representation was deficient because of his failure to investigate and develop useful evidence will not suffice. ***Anderson v. Collins***, 18 F.3d 1208, 1221 (5th Cir. 1994).   Divins has provided no specifics for this claim.

Divins also asserts that Guyer failed to call witnesses. Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. ***Day v. Quarterman***, 566 F.3d 527, 538 (5th Cir. 2009).   To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. ***Id***.  Again, Divins has fallen short of these requisites.

Divins contends that Guyer failed to file motions to suppress and to dismiss the superseding indictment but does not state what factual or legal basis existed for either motion.   She argues that he failed to discuss a plea bargain with her.   However, as one of

her claims of prosecutorial misconduct, Divins states that the prosecutor failed to communicate a plea offer.  Guyer can hardly be faulted for failing to discuss a plea bargain with her that had never been offered by the government.

One of Divins' claims raises some concern.  She alleges that Guyer refused to allow her to testify.  A criminal defendant's right to testify is well-established.  A defendant who argues that his attorney prevented her from testifying must still satisfy the two prongs of *Strickland*.  *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007).  Only the defendant may waive her right to testify, not her counsel, and it must be knowing and voluntary.  *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002).  It cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice.  *Id*. at 453.

After the government rested and the District Court denied the motion of Divins' attorney for acquittal, the District Court stated to her attorney, "And now, Mr. Guyer, if your client will make her final decision on whether she wants to testify or not." **Transcript II of III**, pp. 467-68.  Guyer requested additional time to call witnesses.  The request was denied and the District Court stated that she had five minutes to decide whether she wanted to testify. **Id.**, p. 468.  Guyer requested for time to confer, which was granted.  After a discussion off the record, Guyer reported, "Mrs.

24

Divins will not testify." **Id.** Seeking confirmation, the District Court responded, "Will not? ... All right. For the record then, Mr. Guyer, Ms. Divins has decided not to testify?" Guyer replied, "Yes." **Id.**

Although silence alone is not determinative of a defendant's decision not to testify, if the defendant's attorney makes a clear statement in open court that he has conferred with the defendant who has agreed not to testify, it is reasonable to expect that the defendant would have indicated her disagreement with that statement if it was false. **United States v. Johnson**, 2011 WL 826289, at *5 (M.D.La. 2011). In the absence of such response, it appears most likely that the defendant ultimately acquiesced in the advice of her attorney and did not take the witness stand based upon that advice. **Id.** In this case, the record reflects that, after Guyer and Divins conferred, Guyer represented on the record that Divins agreed not to testify. Divins voiced no opposition to that statement.[2]

When the record is simply that the defendant knew of her right to testify and wanted to do so but counsel was opposed, then defendant acquiesced in his lawyer's advice, and the only inquiry is whether that advice was sound trial strategy. **Mullins**, 315 F.3d

---

[2]At the time of sentencing, Divins chose to remain silent, following the advice of her new lawyer, Oscar L. Cantu, Jr. **Transcript of Sentencing Hearing**, pp. 3-4. While this decision was made at a different point in the proceedings, it is probative of her willingness to follow the advice of counsel as regards testifying.

at 453-54.  There is a strong presumption that counsel's decision not to place a defendant on the stand was sound trial strategy. **Bower**, 497 F.3d at 473.  In examining that strategy, the Court must keep in mind that the decision whether to put a defendant on the stand is a judgment call which should not easily be condemned with the benefit of hindsight.  **Mullins**, 315 F.3d at 453.

No witnesses testified for the defense.  As noted above, apparently no one could be presented at trial to justify Divins' actions or to substantiate her testimony.  If Divins had testified, it would have been necessary for her to explain how, as noted by the Court of Appeals:

> For the past 30 years, Divins has made a living swindling financially distressed people by promising (falsely) to keep their homes out of foreclosure in exchange for exorbitant fees. ...  At least eight individuals testified against Divins, including Jackie Guerrero, Guadalupe Dominguez, Stanley Miele, Tommy Bordelon, Lupe Monreal, Maria Martinez, Issac Vela, and Juana Anderson.  Their stories were similar. Each had faced the possibility of foreclosure due to some sort of financial hardship brought about by an illness or a lost job.  Divins had contacted them via mailed flyers promising that she could keep them out of foreclosure in exchange for thousands of dollars in up-front fees. In each case, Divins either had absconded with the money or refused to return it when she failed to secure the clients relief from foreclosure. Many of Divins' victims ultimately spent thousands more on real attorneys to undo the damage Divins caused.

Had Divins testified, she would have subjected herself to cross-examination and the possibility that, in attempting to explain her actions, she would commit perjury.  Testimony was elicited that Divins hounded the victims for payment.  She was convicted of harassment four times and of stalking once, evidence

26

which may have been used against her had she testified at trial.
In light of her conviction on all counts and her substantial
sentence, it would be easy to question Guyer's advice now.
However, **Strickland** mandates that judicial scrutiny of counsel's
performance be highly deferential and expressly forbids that type
of second-guessing. **Strickland**, 466 U.S. at 689. A defendant must
overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy. **Id**.
Divins has failed to carry her burden of showing that Guyer's
advice did not constitute sound trial strategy.

## Recommendation

It is, therefore, the recommendation of the Magistrate Judge
that Divins' § 2255 motion to vacate sentence be **DENIED**. Divins
has not made a substantial showing of the denial of a
constitutional right. It is further recommended that a certificate
of appealability be **DENIED**.

## Instructions for Service and
## Notice of Right to Object

The District Clerk shall serve a copy of this Memorandum and
Recommendation on all parties either electronically or by mailing
a copy by certified mail, return receipt requested. Pursuant to 28
U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who
desires to object to this Memorandum and Recommendation must serve
and file specific written objections within 14 days after being

served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge.*** A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from ***de novo*** review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Services Automobile Association***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

   **SIGNED** January 17, 2012.


_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE